**Louis J. CAPOZZI, Plaintiff,**

v.

**The CITY OF ALBANY, Peter Krasher, Officer A, Officer B, Officer C, Lieutenant D, Officer E, Officer F, Officer X, Officer Y and Officer Z, the foregoing names being fictitious, the real names of the defendants being unknown to plaintiff, said fictitious names being intended to designate members of the Police Department of the City of Albany, New York, Defendants.**

No. 81–CV–1096.

United States District Court,
N.D. New York.

June 3, 1983.

William A. Sekellick, Albany, N.Y., for plaintiff.

Vincent J. McArdle, Jr., Corp. Counsel, Albany, N.Y., for defendants; Joseph V. Zumbo, John L. Shea, Asst. Corp. Counsel, Albany, N.Y., of counsel.

MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, Senior District Judge.

On March 10, 1983 after three days of trial before me, the jury returned a special verdict in this civil rights action with favorable answers for the plaintiff on several claims against defendant Krasher. These claims were: civil rights violation pursuant to 42 U.S.C. § 1983; false arrest and false imprisonment; and abuse of process. The jury awarded money damages on these claims in the amount of $25,000. Negative answers were made to questions on two of his claims: battery and malicious prosecution. A judgment was directed to be entered on March 10, 1983 against defendant Krasher and defendant City of Albany due to the City's liability on the state law claims on the basis of respondeat superior. At the close of the evidence, the City of Albany's motion for a directed verdict on the civil rights claim under § 1983 was granted on the ground that plaintiff failed to allege or prove by a preponderance of evidence an official policy or custom which is necessary to the claim. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983). Plaintiff's request for punitive damages against the individual police officer, Krasher, was voluntarily withdrawn by his attorney at the close of the evidence. A notice of appeal from the judgment in this action was filed by the defendants on March 31, 1983.

Now before the court is plaintiff's motion for an award of attorneys' fees pursuant to 42 U.S.C. § 1988 for the services of William A. Sekellick, his associates and law clerk.

Title 42 U.S.C. § 1988 provides as follows:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

It is clear that § 1988 vests discretionary authority in the district court to consider whether attorney's fees should be awarded, *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *McCann v. Coughlin,* 698 F.2d 112, 128 (2d Cir.1983); *Kerr v. Quinn,* 692 F.2d 875 (2d Cir.1982). However, "[t]he latitude afforded trial courts in exercising that discretion is narrowed by a presumption that successful civil rights litigants should recover an attorney's fees unless special circumstances would render an award unjust." *Kerr v. Quinn, supra,* 692 F.2d at 877, citing *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). In a case where local counsel would recognize that the merits of a case were obviously strong and that there was a probability of a high damage award, a district court has the discretion to deny an application for counsel fees. *Id.*

In the present circumstances, in my judgment plaintiff is entitled to an award of attorney's fees. Although the merits of the case were in plaintiff's favor, the case was heavily dependent upon a favorable credibility determination by the jury. For this reason and the fact that defendants do not contest plaintiff's entitlement to attorney's fees, the court's discretion will be exercised in favor of an award of fees as to be presumed ordinarily for a prevailing plaintiff. The only response from defendants to the motion is a letter dated April 4, 1983 which states that they feel "that the fee requested is exhorbitant under all of the circumstances and [that defendants] rely

upon the discretion of the Court in establishing the amount of the fee to be awarded."

In fixing the amount of an attorney's fee award, it has been stressed that the courts need to view such awards with an "eye to moderation" so as to avoid even the appearance of windfall fees. *Wheatley v. Ford,* 679 F.2d 1037, 1040 (2d Cir.1982), citing *Beazer v. New York City Transit Auth.,* 558 F.2d 97, 101 (2d Cir.1977), *rev'd on other grounds,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 469–70 (2d Cir. 1974) (*Grinnell I*). The factors to be considered in setting a reasonable fee were set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). The *Johnson* factors were recently relied upon by the Supreme Court in *Hensley.* These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

*Hensley v. Eckerhart, supra,* —— U.S. at ——, 103 S.Ct. at 1937, n. 3, citing *Johnson v. Georgia Highway Express, Inc., supra,* 488 F.2d at 717–719.

■ A two-step procedure is followed in calculating an award of attorney's fees. The "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart, supra,* —— U.S. at ——, 103 S.Ct. at 1939. The Court of Appeals, Second Circuit, consistently refers to this step as fixing the "lodestar" amount. *See Cohen v. West Haven*

*Board of Police Commissioners,* 638 F.2d 496 (2d Cir.1980), citing *City of Detroit v. Grinnell Corp.,* 560 F.2d 1093, 1098 (2d Cir. 1977) (*Grinnell II*).

In the second step, the court may adjust the lodestar figure upward or downward. The adjustment may be made to reflect subjective factors such as "the risk and complexity of the litigation and the quality of the representation", *Cohen v. West Haven Board of Police Commissioners, supra,* 638 F.2d at 505, and the "results obtained" by the plaintiff, *Hensley v. Eckerhart, supra,* —— U.S. at ——, 103 S.Ct. at 1940.

■ In fixing the rate of compensation to be awarded it is important to note that the court is not bound by the rate which a lawyer charges his other clients. *McCann v. Coughlin, supra,* 698 F.2d at 130. The reasonableness of the rate should be measured according to the normal rate in the legal community for substantially similar work by competent practitioners. *Id.; Johnson v. Georgia Highway Express, Inc., supra,* 488 F.2d at 718. A different hourly rate may be set for different types of litigation tasks. *Cohen v. West Haven Board of Police Commissioners, supra,* 638 F.2d at 505.

■ This case was not unusually complex. Cases very similar to the present case, against a law enforcement officer without alleging a constitutional claim, have been tried in New York courts for many years. Since the enactment of 42 U.S.C. § 1988, which allows the award of attorney's fees to the prevailing party, understandably there has been an increase in filing of this type case in the federal courts under 42 U.S.C. § 1983 with the joinder of several state pendent claims. After much turbulence, the law to be applied in determining the amount of the award has reasonably settled down by the above rulings of the Supreme Court and the federal circuit courts. In an award of attorney's fees for legal services, the work performed must be only that which is necessary to the preparation and trial of the issues in the particular case; fees are not to be awarded for

general research and purposes not relevant or necessary to the issues of a particular case.

In a detailed submission, plaintiff has requested attorneys' fees in the following amounts:

|  | Hours | Hourly rate requested |
|---|---|---|
| Mr. Sekellick | 212.75 | $150.00 |
| Associates | 81.0* | $100.00 |
| Law Clerk | 41.9 | $ 25.00 |

(*hours set forth in attorney's affidavit were incorrectly added to equal 81.9)

Total compensation request, with no multiplier, is $41,150.00.

The above requested rates of compensation are higher than what is normally charged to single case clients by the Sekellick firm. Sekellick's normal rate is $100.00 an hour and the associates' normal rate is $75.00 an hour. Attorney Sekellick seeks a higher rate of compensation "because of the high risk undertaken. . . . "

■ With an "eye to moderation" and in light of recent cases on the subject in this district, it is clear that an hourly rate of $150.00 for Attorney Sekellick is much too high. In a very recent case in this district, an experienced attorney of 20 years with extensive background in civil rights litigation was awarded the amount of $100 an hour. *See Jacobson v. Coughlin*, 81–CV–635 (N.D.N.Y. April 12, 1983). In *Visser v. Magnarelli*, 542 F.Supp. 1331 (N.D.N.Y. 1982), an attorney was awarded $75 an hour which represented "the hourly rate normally charged for similar work by attorneys of like skill." *Id.* at 1338. Awards based on the rate of $50 an hour have also been awarded to experienced attorneys. *See Johnson v. Rada*, 80–CV–424 (N.D.N.Y. 1982); *Thomas v. Board of Education*, 505 F.Supp. 102, 104 (N.D.N.Y.1981).

■ From Attorney Sekellick's affidavit in support of this motion, it is clear that he has had considerable civil litigation experience. However, this was the first civil rights action to be tried by him. An attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others. *Johnson v. Georgia Highway Express, Inc., supra* 488 F.2d at 719. Therefore, it is my judgment that the highest rate at which Sekellick should be compensated is the rate of $75 an hour. This is the hourly rate charged for similar work by attorneys of like skill in this locality.

■ It is important to note that the hourly rate of $75 an hour need not be applied in a uniform fashion to all the hours expended by Attorney Sekellick. The hourly rate depends on the different types of litigation tasks. *See Cohen v. West Haven Board of Police Commissioners, supra,* 638 F.2d at 505. For example, different rates can be awarded for court appearances and depositions, office time and travel time. *See Jacobson v. Coughlin, supra,* ($25 an hour for travel time); *Burleigh v. Onondaga Suburban Foods, Inc.,* 78–CV–200 (N.D. N.Y. July 12, 1982) ($65 an hour for court appearances and depositions, $50 an hour for office work, and $25 an hour for travel).

According to his affidavit, Attorney Sekellick spent 51 hours in trial, pre-trial conferences, hearings and at a deposition. The rate to be given these types of litigation tasks will be $75 an hour. The bulk of the hours spent on this litigation by Attorney Sekellick, 160.4 hours, was "office work" which included a great deal of research on federal litigation and procedure in general and on civil rights litigation in particular. After reviewing the time sheets submitted, it is my judgment that the rate of compensation for these tasks should be set at $45 an hour. The lower rate reflects the fact that some of the time spent on research and on the drafting of pleadings might have been duplicative since more than one attorney was involved and the fact that this was the first civil rights litigation handled by Sekellick's firm. *See Seigal v. Merrick,* 619 F.2d 160, n. 9 (2d Cir.1980); *Johnson v. Georgia Highway Express, Inc., supra,* 488 F.2d at 717. Finally, Attorney Sekellick spent 1.3 hours performing clerical and administrative tasks such as service and filing of court papers. "Routine or clerical matters should receive a lower valuation than

complex ones." *Desimone v. Industrial Bio-Test Laboratories, Inc.,* 83 F.R.D. 615, 621 (S.D.N.Y.1979). The time spent on these tasks will be awarded at the rate of $15 an hour.

The request for $100 an hour for the associates' time must also be reduced. The associates had very limited experience of any kind and played a minor role in the litigation. For this reason, the highest hourly rate to be awarded them is set at $35. Most of the associates' time in this litigation, 80.5 hours, was spent on research and various other litigation tasks such as drafting a motion to strike defenses and drafting answers to interrogatories. An award for these hours will be based on the rate of $35 an hour. An associate also spent .5 hours on clearly what is termed as clerical and administrative work which will be awarded at the rate of $15 an hour.

The hourly rate for the services of the law clerk is set at $15 an hour. *See Layden v. Costello,* 80–CV–300 (N.D.N.Y. June 9, 1982). The rate of $15 an hour will be applied to all of the law clerk's hours including time spent on tasks such as photocopying and filing.

The lodestar figure reached by multiplying the number of hours worked by counsel times the hourly rates as set forth above equals an award of attorneys' fees in the amount of $14,516.00. As previously noted, in the second step of the procedure this figure can be adjusted upward or downward to take into account various subjective factors.

▪ In the present circumstances, the lodestar need not be adjusted downward especially since the hourly rate awarded to counsel was substantially lower than requested by the plaintiff. This is a fair and reasonable award when compared with other awards in this district. Furthermore, the award should not be reduced because plaintiff was unsuccessful on some of his claims. All of plaintiff's claims were related, therefore the hours spent on the unsuccessful claims will not be excluded. *See Hensley v. Eckerhart, supra,* —— U.S. at ——, 103

S.Ct. at 1940; *McCann v. Coughlin, supra,* 698 F.2d at 129.

▪ As far as awarding a bonus as an increase in the lodestar amount of $14,516.00, it should be noted that counsel has not requested a multiplier. The burden of proving entitlement to an upward adjustment is on the moving party. *Grinnell II, supra,* 560 F.2d at 1100. In the present case, the factual and legal issues were straightforward and were not novel. *See Wheatley v. Ford, supra,* 679 F.2d at 1040. In deciding not to make an upward adjustment, consideration was also given to the fact that the case vindicates only plaintiff's individual rights and has no other particular precedential value or long range benefits. *See Hensley v. Eckerhart, supra,* —— U.S. at ——, 103 S.Ct. at 1942; *Holley v. Lavine,* 605 F.2d 638, 646 (2d Cir.1979). *See also Wright v. McMann,* 321 F.Supp. 127 (N.D.N.Y.1970), *aff'd in part, rev'd in part,* 460 F.2d 126 (2d Cir.1972), *cert. denied,* 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972); *Frazier v. Ward,* 426 F.Supp. 1354 (N.D.N.Y.1977). Furthermore, no bonus is warranted on the basis that the prosecution of the case precluded other employment since no evidence of this was offered by counsel.

▪ In determining the amount of a fee award, the court can also consider the existence of a contingency fee arrangement. In the present case, the fee arrangement between plaintiff and counsel was explained as follows:

[Counsel's] fee is to be fifty (50%) of the total recovery, net of disbursements ... or the amount of the attorney's fees awarded by the court, whichever may be greater.

It is settled that the existence of a contingency contract is not sufficient reason to deny an award under § 1988. *Wheatley v. Ford, supra,* 679 F.2d at 1041, citing *Buxton v. Patel,* 595 F.2d 1182, 1185 n. 3 (9th Cir. 1979); *Sargeant v. Sharp,* 579 F.2d 645, 648 (1st Cir.1978). The court has power to supervise a contingency arrangement and formulate a fee award designed to avoid a windfall to the attorney. *Id.* Here, under

the arrangement between plaintiff and counsel, attorney Sekellick will receive no benefit from the contingency contract since it has been waived under the agreement. Plaintiff's attorneys' fees will be received from the defendants and no contingency fee will be paid by plaintiff; therefore, counsel will not receive a windfall and full effect is given "to the Congressional desire to promote private enforcement [of the Civil Rights Acts] by allowing citizens 'the opportunity to recover what it costs them to vindicate these rights in court.'" *Id., citing* S.Rep. No. 1011, 94th Cong., 2d Sess. 2, reprinted in 1976 U.S.Code Cong. & Ad. News 5908, 5910.

Plaintiff's motion for attorneys' fees also includes a request for costs in this action in the amount of $318.95. Attorney's fee awards can include reasonable out-of-pocket expenses incurred by the attorney that are normally charged to a fee-paying client in the course of providing legal services. *Northcross v. Board of Education of Memphis,* 444 F.2d 1179 (6th Cir.1979); *Thomas v. Board of Education,* 505 F.Supp. 102, 105 (N.D.N.Y.1981). The amount of the costs requested herein appears to be reasonable; therefore, the plaintiff is entitled to reimbursement.

Accordingly, the Court adjudges that the following award of attorneys' fees be made:

Mr. Sekellick

| | | |
|---|---|---|
| 51 hours at an hourly rate of $75 | = | $ 3825.00 |
| 160.4 hours at an hourly rate of $45 | = | 7218.00 |
| 1.3 hours at an hourly rate of $15 | = | 19.50 |

Associates

| | | |
|---|---|---|
| 80.5 hours at an hourly rate of $35 | = | $ 2817.50 |
| .5 hours at an hourly rate of $15 | = | 7.50 |

Law Clerk

| | | |
|---|---|---|
| 41.9 hours at an hourly rate of $15 | = | 628.50 |
| Costs and Disbursements | = | 318.95 |
| TOTAL | = | $14,834.95 |

A judgment in such amount, $14,834.95, shall enter in favor of the plaintiff against both defendants.

It is so Ordered.